IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:17-cv-897

| | |
|---|---|
| MARKET AMERICA, INC.; MARKET AMERICA WORLDWIDE, INC; JAMES HOWARD RIDINGER; LOREN RIDINGER; and MARC ASHLEY,<br><br>Petitioners,<br><br>v.<br><br>CHUANJIE YANG; OLLIE LAN; and LIU LIU,<br><br>Respondents. | **PETITION FOR ORDER COMPELLING ARBITRATION** |

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.*, Petitioners Market America, Inc. ("Market America"), Market America Worldwide, Inc., James Howard Ridinger, Loren Ridinger, and Marc Ashley (collectively, "Petitioners") allege as follows:

## PARTIES

1. Petitioner Market America is a 25-year-old product brokerage and Internet one-to-one marketing company. It is a corporation organized and existing under the laws of the State of North Carolina with its headquarters in Greensboro, North Carolina, where nearly 600 Market America employees work.

2. Petitioner Market America Worldwide, Inc. is a corporation organized and existing under the laws of the State of North Carolina with its headquarters in Greensboro, North Carolina. It is the parent company of Market America.

3. Petitioner James Howard Ridinger is a resident of Miami, Florida. Mr. Ridinger founded Market America in 1992 and serves as Market America's Chief Executive Officer.

4. Petitioner Loren Ridinger is a resident of Miami, Florida, and the Senior Executive Vice President of Market America.

5. Petitioner Marc Ashley is a resident of North Carolina and the President and Chief Operating Officer of Market America.

6. Respondents Chuanjie Yang, Liu Liu, and Ollie Lan ("Respondents") are individuals that, upon information and belief, reside in Los Angeles County, California. Respondents are plaintiffs in a putative class action filed against Petitioners in the United States District Court for the Central District of California, which is styled *Chuanjie Yang et al. v. Market America, Inc. et al.*, Case No. 2:17-cv-04012 (C.D. Cal.) (the "California Action"). A true and correct copy of the original class action complaint and the operative first amended class action complaint (the "FAC") are attached hereto as Exhibits 1 and 2.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this Petition based on 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy, as set forth in the FAC, exceeds $75,000, exclusive of interest and costs, and

2

based on 28 U.S.C. § 1367 because the state law claims alleged in the California Action arise from the same case and controversy as Respondents' federal law claims. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . for an order directing that such arbitration proceed in the manner provided for in such agreement").

## **GENERAL ALLEGATIONS**

I. <u>Respondents Assent to the Terms and Conditions of Market America's Distributor Agreement.</u>

8. Market America sells products through a network of independent distributors known within Market America as Independent UnFranchise Owners ("Distributors").

9. Since 1992, Market America has required all Distributors to sign an agreement that is now known as the "Independent UnFranchise Application and Agreement" (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit 3.[1]

---

[1] The version of the Agreement submitted as Exhibit 3 to this Petition is the same version that Respondents' attorney submitted as an exhibit to his declaration in support of a brief filed in the Central District of California. *Chuanjie Yang, et al. v. Market America, Inc., et al.*, Case No. 2:17-cv-04012-GW-JEM, Dkt. No. 43-9 (C.D. Cal.). Although the Agreement has changed in minor ways over the years, the arbitration provision and the choice of law provision have remained the same since 2010.

10. Distributors can sign the Agreement with Market America online or in paper form. To sign up online, a Distributor has to fill out his or her personal information before being presented with a copy of the Agreement. Before the Distributor can submit the Agreement, the Distributor must click a box indicating that he or she assents to the Agreement's Terms and Conditions. The Terms and Conditions are not presented in a hyperlink; rather, the Terms and Conditions are presented on the same page as the checkbox.

11. Similarly, if a Distributor signs up using a paper form, the Terms and Conditions are listed on the back of the Agreement, and the Distributor must sign the form acknowledging that he or she agrees to the terms.

12. Market America's records show that respondent Chuanjie Yang signed up as a Distributor online in May 2010 and remained a Distributor until August 2015.[2] Respondent Yang renewed his Agreement in 2010 and 2011. Beginning in 2012, Market America's records indicate that Yang opted in to automatically renew ("Auto Renewal") online by clicking "I agree" to the following terms:

> Acceptance of Amendments to IDA&A. By agreeing to these terms and conditions for Auto Renewal, you agree to the incorporation by reference of all amendments and/or revisions of the IDA&A as you agreed to it originally, as provided during the previous year in official Market America literature. Renewal of the IDA&A and Forms 925/1001. You renew your IDA&A with Market America. You agree to be bound by the Terms and Conditions of that Agreement . . . as amended from time to time."

---

[2] In a declaration filed in the California Action Respondent Yang denied that he signed up online as Market America's records indicate, but admitted, nonetheless, that he signed a one-page piece of paper. Irrespective of whether Mr. Yang signed up online or by paper form, he would have assented to the Agreement's Terms and Conditions.

13. Respondent Ollie Lan signed up online in November 2015, but did not renew the Agreement in November 2016 and is currently listed as inactive in Market America's system.

14. Respondent Liu Liu signed up online on March 1, 2016, but did not renew the Agreement in March 2017, and is currently listed as inactive in Market America's system.

15. Market America's records indicate that all three Respondents assented to the Terms and Conditions of the Agreement by clicking "I agree" next to the Agreement's Terms and Conditions.

II. <u>The Agreement Includes An Enforceable Arbitration Provision That Applies to "Any Controversy or Claim Arising Out Of or Relating To" the Agreement.</u>

16. By assenting to the Terms and Conditions of the Agreement, Market America and the Respondents agreed to arbitrate any disputes arising out of or relating to the agreement in an arbitration administered by the American Arbitration Association. The relevant provision provides as follows:

> <u>Arbitration</u>. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall ultimately be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrators may be entered in a court of competent jurisdiction. You understand that this arbitration provision means you are giving up the right to have any dispute you have regarding this Agreement heard by a jury and determined in a court of law. The arbitration shall be heard by one arbitrator, and it shall take place in Greensboro, North Carolina. Either party may seek emergency or provisional relief in the General Court of

Justice, Guilford County, North Carolina, prior to invoking the arbitration remedy.

(Exhibit 3, § 29.)

17. The Agreement further provides that "North Carolina law shall govern any dispute arising out of, or related to, this Agreement notwithstanding its choice of law provisions." (Exhibit 3 § 28.)

18. Market America did not change the Arbitration Provision or the choice of law provision between 2010 and 2016, and all three Respondents assented to both provisions when they signed up to be Distributors.

19. As a written provision in a contract that involves interstate commerce, the Arbitration Provision is valid and enforceable against Respondents. *See* 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ."); *Zandford v. Prudential-Bach Secs., Inc.*, 112 F.3d 723, 726 (4th Cir. 1997) (noting that there is a "federal policy strongly favoring arbitration").

III. <u>Respondents File a Lawsuit Against Petitioners in California That Arises Out Of and Relates to Their Agreements with Market America.</u>

20. Despite the Arbitration Provision, Respondents Chuanjie Yang and Ollie Yan filed the California Action on May 30, 2017. (Exhibit 1.)

21. Respondents amended their complaint on July 20, 2017, to add Respondent Liu Liu. (Exhibit 2.)

6

22. The FAC asserted eight claims for relief against Petitioners: (1) judgment declaring the Arbitration Provision unenforceable; (2) endless chain scheme under California Penal Code § 927 and California Civil Code § 1689.2; (3) unfair and deceptive practices claims under California Business & Professional Code § 17200, et seq.; (4) false advertising under California Business & Professional Code § 17500, et seq.; (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a); (6) RICO, 18 U.S.C. § 1962(c); (7) RICO, 18 U.S.C. § 1962(d); and (8) federal securities fraud. In short, the FAC alleges that Market America's relationship with its Distributors constitutes an unlawful pyramid and/or fraudulent endless chain in violation of California state law and federal law.

23. Because the Agreement with Respondents is essential to their claims against Petitioners, the Agreement's broad Arbitration Provision applies to all eight causes of action in the FAC. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (describing an arbitration clause that applied to "[a]ny controversy or claim arising out of or relating to this Agreement" as a "broad arbitration clause"); *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) ("Any uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration.").

24. Petitioners moved, over Respondents' opposition, to transfer the California Action to this district pursuant to the Arbitration Provision. In a tentative ruling, the

7

Central District of California invited Petitioners to file this petition. (Exhibit 4, p. 5, fn.6.)[3]

25. A true and correct copy of the Central District of California's Minutes of its November 6, 2017, hearing, which encloses the Court tentative ruling, is attached hereto as Exhibit 4.

26. Petitioners intend to inform the Central District of California that they have filed this Petition and to ask the court to, among other options, stay the California Action until this Court can decide whether to compel arbitration in North Carolina.

## CLAIM FOR SPECIFIC RELIEF

Specific Performance of Arbitration Provision

27. Respondents breached the Arbitration Provision by ignoring the Arbitration Provision and filing the California Action. Pursuant to 9 U.S.C. § 4, Petitioners are entitled to an order requiring Respondents to comply with the Arbitration Provision and directing that arbitration proceed in the manner provided for in the Arbitration Provision.

WHEREFORE, Petitioners pray as follows:

1. That Respondents be ordered to arbitrate all claims alleged against Petitioners in *Chuanjie Yang et al. v. Market America, Inc. et al.*, Case No. 2:17-cv-04012 (C.D. Cal.);

2. That Petitioners be awarded such other relief as the Court deems proper.

---

[3] As described in the tentative ruling, Petitioners first asked the Central District of California to compel arbitration, but re-styled their motion as a motion to transfer to this District based on Ninth Circuit precedent that could be read to suggest that the Central District of California cannot compel arbitration in North Carolina.

Respectfully submitted this the 5th day of October, 2017.

        WOMBLE CARLYLE SANDRIDGE & RICE, LLP

        /s/ Pressly M. Millen
        Pressly M. Millen
        N.C. State Bar No. 16178
        555 Fayetteville Street, Suite 1100
        Telephone: (919) 755-2100
        Facsimile: (919) 755-2150
        Email: pmillen@wcsr.com

        *ATTORNEYS FOR PETITIONERS MARKET AMERICA, INC.; MARKET AMERICA WORLDWIDE, INC; JAMES HOWARD RIDINGER; LOREN RIDINGER; and MARC ASHLEY*

9

Case 1:17-cv-00897-UA-JEP   Document 1   Filed 10/05/17   Page 9 of 9