IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARKET AMERICA, INC., | ) | |
| MARKET AMERICA WORLDWIDE, INC., | ) | |
| JAMES HOWARD RIDINGER, | ) | |
| LOREN RIDINGER, and | ) | |
| MARC ASHLEY | ) | |
| | ) | |
| | ) | |
| Petitioners, | ) | |
| v. | ) | 1:17CV897 |
| | ) | |
| CHUANJIE YANG, | ) | |
| OLLIE LAN, and | ) | |
| LIU LIU, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER AND MEMORANDUM OPINION

This matter comes before the Court on a Petition for Order Compelling Arbitration filed by Market America, Inc. ("Market America"), its parent company Market America Worldwide, Inc., and its officers James Howard Ridinger, Loren Ridinger, and Marc Ashley (collectively "Petitioners"). Petitioners commenced this action requesting an order compelling arbitration in response to a lawsuit filed in the United States District Court for the Central District of California by Respondents Chuanjie Yang, Ollie Lan, and Liu Liu ("Respondents"). In response to the Petition, Respondents have filed a Motion to Dismiss [Doc. #12] and Motion to Strike [Doc. #19]. For the reasons that follow, the Motion to Dismiss and Motion to Strike will be denied.

## I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

Market America is a self-described "product brokerage and Internet one-to-one marketing company," with headquarters in North Carolina.  (Petition [Doc. #1] ¶ 1.) Petitioners allege that Respondents are independent distributors for Market America and that each signed an "Independent Unfranchise Application and Agreement" ("Agreement" or "Distributor Agreement") that is at the core of the parties' dispute.  (Id. ¶¶ 9-14, n. 2.)   The Agreement contains several terms or conditions relevant to the parties' present dispute:

> 4.      Modification.   Market America, at its discretion, may amend the [Management Performance Compensation Plan], the policies and procedures in Part 2 of the *Career Manual*, and terms of this Agreement, and shall notify you of  any such amendments in the *Powerline* magazine or other official Company publications or communications.

> ****

> 20.  Distributor Grievances.  You agree to submit any complaint, grievance, or claim against another Distributor or Market America in accordance with the Grievance Procedure set forth in the *Career Manual*.  You agree not to seek arbitration, take legal action except in accordance with the Grievance Procedure [ . . .]

> ****

> 28.  Choice of Law.  North Carolina law shall govern any dispute arising out of, or related to, this Agreement notwithstanding its choice of law provisions.

> ****

> 29.  Arbitration.  Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall ultimately be settled by arbitration . . . in  Greensboro,  North  Carolina.    Either  party  may  seek  emergency  or

provisional relief in the General Court of Justice, Guilford County, North Carolina, prior to invoking the arbitration remedy.

\*\*\*\*

30. <u>Entire Agreement.</u> This Agreement and Part 2 of the Career Manual constitute the entire agreement between you and Market America

(Petition, Ex. 3 at 3.) According to the Petition, Respondent Chuanjie Yang signed the Agreement online in May 2010, renewed his Agreement in 2010 and 2011, and beginning in 2012, "opted in to automatically renew" by clicking "I agree" to the following terms:

Acceptance of Amendments to IDA&A. By agreeing to these terms and conditions for Auto Renewal, you agree to the incorporation by reference of all amendments and/or revisions of the IDA&A as you agreed to it originally as provided during the previous year in official Market America literature . . . You agree to be bound by the Terms and Conditions of that Agreement . . .as amended from time to time."

(Petition ¶ 12.) The Petition alleges that Respondent Lan signed the Agreement online in November 2015, and Respondent Liu signed the Agreement online on March 1, 2016. (<u>Id.</u> ¶¶ 13-14.)

On May 30, 2017, Respondents Yang and Lan commenced a putative class action ("the California Action") in the United States District Court for the Central District of California against Petitioners. (Petition, Ex. 1; <u>Chuanjie Yang v. Market America Inc.</u>, 2:17cv4012 (C.D. Cal. 2017). Petitioners filed a motion to compel arbitration, and Respondents amended the complaint on July 20, 2017, to add Respondent Liu as a plaintiff and to include an argument that the district court in California lacked subject matter jurisdiction to compel arbitration outside its judicial district. (Petition, Ex. 2 ¶ 72.) As amended, the complaint in the California

Action seeks a declaratory judgment that the arbitration provision in the Agreement is unenforceable, and also asserts claims under state law for an "endless chain scheme," for unfair and deceptive practices, and for false advertising, as well as claims for damages under 18 U.S.C. § 1962(a) (RICO), and for federal securities fraud. (Petition, Ex. 2.) Market America moved to transfer the California Action to this judicial district, or to stay or dismiss the case pending arbitration. (Petition, Ex. 4 at 2.) Petitioners then filed the present action in this Court. The district court in the California Action subsequently held a hearing on the Motion to Transfer. While not necessarily sharing the parties' concerns about its ability to compel arbitration in another judicial district, the district court nevertheless stayed the California Action in light of the commencement of this action, noting that it may not need to confront the jurisdictional issue in light of any action taken by this Court.

In response to the Petition to Compel Arbitration filed in this Court, Respondents filed the present Motion to Dismiss, contending that this Court lacks personal jurisdiction, that the Court lacks subject matter jurisdiction, that venue is improper, and that the petition fails to state a claim for arbitration. (Resp'ts' Br. [Doc. #13] at 6-19.) Respondent Yang further contends that, to "the best of my recollection" whatever documents he signed did not contain any "terms and conditions," and therefore Yang contends that he did not agree to arbitrate claims against Market America. (Yang Decl., Ex. L [Doc. #14-12] ¶ 3.)

II.    DISCUSSION

Pursuant to the Federal Arbitration Act,

4

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985) (emphasis in original). "However, a party cannot be required to arbitrate a dispute that it has not agreed to submit to arbitration." <u>Fastener Corp. of Am. v. Asheboro Elastics Corp.</u>, No. 1:12-CV-1296, 2013 WL 3227665, at *2 (M.D.N.C. June 25, 2013) (citing <u>AT & T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986)).

The Court will compel arbitration under the FAA if "(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement." <u>Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.</u>, 807 F.3d 553, 563 (4th Cir 2015) (citing <u>Muriithi v. Shuttle Express, Inc.</u>, 712 F.3d 173, 179 (4th Cir. 2013)). "In order to compel arbitration under the [Federal Arbitration Act], a party must show: (1) that a dispute between the parties exist, (2) that a contract between the parties includes an arbitration provision which would seem to cover the dispute, (3) that the contract or transaction at issue involves interstate or foreign commerce, and (4) that one party refuses to arbitrate the dispute." <u>Abdullah v. Duke Univ. Health Sys., Inc.</u>, No. 5:09-CV-8-FL, 2009

WL 1971622 at *3, (E.D.N.C. July 8, 2009)(citing <u>Adkins v. Labor Ready, Inc.</u>, 303 F.3d 496, 500-01 (4th Cir. 2002)).

"[I]n the context of motions to compel arbitration brought under the Federal Arbitration Act . . . courts apply a standard similar to that applicable to a motion for summary judgment." <u>Minter v. Freeway Food, Inc.</u>, No. 1:03CV00882, 2004 WL 735047, at *2 (M.D.N .C. Apr. 2, 2004). Under the FAA, a court

> upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration . . . [and] [i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. "If there is an unresolved dispute over the existence of an arbitration agreement, the court conducts a 'restricted inquiry into factual issues.'" <u>Dillon v. BMO Harris</u>, 173 F. Supp. 3d 258, 263 (2016) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 22 (1983)). "Where a proponent of an arbitration agreement offers credible, admissible evidence to support a finding of an agreement to arbitrate, the opponent cannot rely on mere unawareness of whether it had made an arbitration agreement," and "[i]n disputed cases, the party opposing arbitration must unequivocally deny that there was an arbitration agreement and produce evidence to substantiate the denial." <u>Id.</u> at 264.

In opposing the Petition, Respondents raise four issues. First, Respondents contend that the Petition violates the "First to File" rule because the California Action was filed first and should have priority. Second, Respondents contend that this Court lacks subject matter

jurisdiction because the underlying claims are already pending in California. Third, Respondents contend that, despite the Forum Selection Clause, venue is not appropriate in this district and that the matter should be transferred to the Central District of California. Finally, Respondents contend that the Petition does not state a claim for arbitration because Respondent Yang did not agree to the arbitration clause and because the arbitration clause is illusory and unconscionable. The Court will consider each of these contentions in turn.

1. "First to File"

Respondents contend that this Court lacks "proper venue" because of the earlier filed California Action. (Resp'ts' Br. [Doc. #13] at 6.) Typically, "[w]hen similar lawsuits are filed in multiple forums, the Fourth Circuit adheres to the 'first-filed' rule, which holds that the first-filed suit should have priority." Family Dollar Stores, Inc. v. Overseas Direct Import Co., Ltd., 3:10-cv-278, 2011 WL 148264, at *2 (M.D.N.C. Jan. 18, 2011) (citing Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 594-95 (4th Cir. 2004)). Courts look to whether the cases have "the same factual issues" and also look to the chronology of the filings and the similarity of the parties and issues. Id. However, exceptions to this rule include circumstances "when the balance of convenience weighs in favor of the second forum," Remington Arms. Co., Inc. v. Alliant Techsystems, Inc., No. 1:03-CV-1051, 2004 WL 444574, at *2 (M.D.N.C. Feb. 25, 2004), or if special circumstances warrant a departure from the rule. Family Dollar, 2011 WL 148264, at *3 (collecting cases).

This Court finds that special circumstances exist to warrant consideration of the

Petition. The Court notes that the district court in California declined to consider whether it may compel arbitration specifically to permit this Court to consider the Petition. See Jefferson Pilot Life Ins., Co. v. Griffin, 1:07-CV-0096, 2008 WL 2485598, at *4. (M.D.N.C. June 16, 2008) ("[T]he Court first notes that the Arizona court in its discretion declined to exercise its jurisdiction over the questions surrounding the arbitration provision and deferred resolution of the issues presented until this Court had the opportunity to entertain whether or not it would exercise jurisdiction over the case."). The district court in California stayed its case pending a determination by this Court, stating that:

> it is the Court's understanding that at this point in time a new action has been filed in North Carolina, and under the agreements at issue here, the arbitration –the arbitration provides provision in the contract requires the arbitration to be done in North Carolina. But there is still the motion to compel arbitration that is currently set for November 16th.

> What my inclination is to do this: Since discretion is the better part of valor I was going to stay this matter to see what the district court in North Carolina does. Obviously, if the district court in North Carolina goes ahead and grants the petition for arbitration, then that will more or less moot out my concerns here. And so that is my tentative at this point in time. In other words, just to stay everything and see what happens.

(Transcript of November 6, 2017 Hearing [Doc. #14-19] at 4-5.) These facts present special circumstances to warrant this Court considering the merits of the Petition.

2.    Subject Matter Jurisdiction

Respondents next contend that this Court lacks subject matter jurisdiction because the underlying claims have already been asserted in the California Action. However, it is undisputed that the exercise of jurisdiction would be appropriate under the FAA where the

underlying claims would support federal jurisdiction based on both the assertion of federal law claims and diversity jurisdiction. See Vaden v. Discover Bank, 556 U.S. 49, 62-63 (2009). To the extent Respondents are again contending that the matter should proceed in California under the "First to File" rule, that contention was already considered above.

    3.    Personal Jurisdiction and Venue

    Respondents challenge personal jurisdiction and venue, and alternatively request that this case be transferred on the basis of "*forum non conveniens*" to the federal district court for the Central District of California where the underlying lawsuit is pending. Respondents maintain that "[t]here is an alternative forum to hear Petitioners' request to compel arbitration" in the Central District of California. (Resp'ts' Br. at 10.) However, as previously noted, Respondents also contend that the federal district court in California is prohibited from compelling arbitration in North Carolina (Petition, Ex. 2 ¶ 72).

    The parties' Agreement contains a forum selection clause that requires disputes to be resolved by arbitration in Greensboro, North Carolina, and a choice of law provision indicating that North Carolina law is controlling. The Agreement further provides that the parties "may seek emergency or provisional relief in the General Court of Justice, Guilford County, North Carolina, prior to invoking the arbitration remedy." (Petition, Ex. 3 ¶ 29.) Because the parties agreed to arbitrate in this district, this Court is an appropriate forum to consider whether arbitration may be compelled within this judicial district. Consulting Engin'rs Corp., v. Geometric Ltd., 561 F.3d 273, 281 n.11 (4th Cir. 2009) (a valid forum

selection clause may act as a waiver to personal jurisdiction); S & D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607, 609 (M.D.N.C. 1997) (permissive forum selection clause is a consent to personal jurisdiction in a venue); Int'l Relief and Dev., Inc. v. Ladu, 1:11-CV-936, 2012 WL 12973666, at *2 (E.D. Va. Jan. 12, 2012) ("Although Respondent is a non-resident of this forum, he consented to personal jurisdiction to the courts in this forum when he entered into the agreement to arbitrate in this forum."); Victory Transp. Inc. v. Comisaria General de Abastecimientos y Transportes, 336 F.2d 354, 363 (2d Cir. 1964) ("By agreeing to arbitrate in New York . . . the Comisaria General must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in New York. To hold otherwise would be to render the arbitration clause a nullity."); see Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG, 26 F. Supp. 3d 496, 506 (M.D.N.C. 2014) (discussing permissive and mandatory forum selection clauses).

Respondents argue that because they are not residents of North Carolina and because a substantial part of the events giving rise to their claims occurred in California, venue is not appropriate in this district. (Resp'ts' Br. at 9.) Further, to the extent that the Court deems venue to be proper, Respondents request that venue be transferred to Central District of California, because North Carolina "should have no public interest in attempting to divest the State of California with the merits of the underlying Complaint asserting California Law," and because California is "more convenient from the stand point of witnesses." (Id. at 9-10.)

Because forum selection clauses "implicate the appropriate venue of a court," a court

will give effect to the parties' selection "only if it would not be unreasonable to do so." Albermale Corp. v. AstraZeneca UK Ltd., 628 F.3d at 643, 651 (4th Cir. 2010). Respondents here may overcome a presumption of validity by "a clear showing" that the clause is unreasonable if "(1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991); The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13, 15, 18 (1972)) (internal quotations omitted).

Respondents' largely ignore these factors and instead request that venue be transferred to the Central District of California under factors applicable as if no forum selection clause were at issue. (Resp'ts' Br. at 9-10.) Respondents contend that a substantial part of the events giving rise to its claims occurred in California, that California is an available and adequate forum to address Petitioners' request to compel arbitration in North Carolina (and presumably the merits of their underlying dispute), and that "it would seem that the State of North Carolina should have no public interest in attempting to divest the State of California with the merits of the underlying Complaint asserting California Law." (Id. at 10.) This argument ignores the relevant legal standard, ignores that the filing of this action in this District is consistent with the forum selection clause in the Agreement, and ignores that North Carolina would have a

public interest in enforcing forum selection and choice of law provisions directed to North Carolina. In addition, there is a clear factual connection to this District, where Market America is a resident and has its headquarters. Respondents later argue, in the context of arbitrability, that the costs to arbitrate in North Carolina would effectively "deter" them from commencing suit. The Court will address those arguments below, but ultimately the Court concludes that Respondents have failed to show that they would be deprived of their ability to pursue their claims. Ultimately, Respondents entered into Agreements with a North Carolina company, Respondents have made demands and claims arising out of that relationship, and the present dispute relates to enforcement of arbitration provisions in those Agreements with respect to those underlying claims. In addition, Respondents have failed to show a sufficient basis for disregarding the forum selection clause in those Agreements. In the circumstances, this Court may exercise specific personal jurisdiction, venue is proper, and the Court finds that this forum is appropriate in light of the forum selection clause in the arbitration provision.

4. Arbitrability.

Finally, Respondents contend that even if the Petition is not dismissed or transferred based on jurisdiction and venue, that the Petition should nevertheless be dismissed because Petitioners have failed to establish arbitrability. Specifically, Respondents contend that Respondent Yang did not assent to arbitration, that the arbitration clause is illusory, that the arbitration clause is unconscionable, that the individual Market America officers were not signatories and cannot enforce the arbitration agreement, that any arbitration should be on a

class basis, and that the underlying Agreement is void.

a.    Assent as to Respondent Yang

Arbitration is a matter of consent, and the burden is on the party seeking to compel arbitration to prove that a valid arbitration agreement exists.  Dillon, 173 F. Supp. 3d at 263. Once a party offers "credible, admissible, evidence to support a finding of an agreement to arbitrate, the opponent cannot rely on mere unawareness of whether it made an arbitration agreement."  Id. at 264.   Instead, the party "must unequivocally deny that there was an arbitration agreement and produce evidence to substantiate the denial."  Id. (citing Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 352 n.3 (4th Cir. 2001)).

In this case, Respondents Lan and Liu do not dispute that they executed the agreement to arbitrate.  However, Respondent Yang submitted an affidavit stating that "on or about 2009" he "signed a one page piece of paper," that "to the best of [his] recollection" did not include any "terms and conditions." (Yang Decl. [Doc. #14-12] ¶ 3.)   Market America contends that it required signed agreements with each of its distributors and that "there is no way to become an independent distributor for Market America except by executing the Agreement." (Erhardt Decl. [Doc. #17-5] ¶¶ 4, 7.)   Market America also contends that Respondent Yang signed the Agreement online on May 15, 2010, by clicking "I agree" to the Terms and Conditions of the Agreement, and Market America has submitted the Affidavit of its Chief Technology Officer, Eugene Wallace, and a copy of an internal screenshot reflecting the submission in support. (Wallace Decl. [Doc. #17-8] ¶¶ 3-4; Notice, Ex. A [Doc. #17-9]).

13

Yang disputes this and states that he "never owned a computer."

Market America further contends that Respondent Yang renewed his Market America distributorship in 2010 and 2011 by signing and mailing copies of the Annual Renewal Form. (Wallace ¶ 16; Notice, Ex. I [Doc. #17-7]). Market America's Annual Renewal Form provides in relevant part:

> By signing this form I acknowledge the incorporation by reference of all changes and/or revisions delineated in official company literature that alter the Independent Distributor Application and Agreement I originally signed
>
> ****
>
> I . . . do hereby renew my Independent Distributor Application and Agreement with Market America as provided in the Independent Distributor Application and Agreement, and I agree to be bound by the terms and conditions of that agreement, including the Market America Career Manual, the Marketing Plan, and the Company's policies and procedures, rules and regulations as amended from time to time.

(Notice, Ex. I). According to Mr. Wallace, from 2012 to 2014, Respondent Yang agreed to automatically renew Yang's annual membership electronically by clicking "I agree" online to the following:

> Acceptance of Amendments to IDA&A. By agreeing to these terms and conditions for Auto Renewal, you agree to the incorporation by reference of all amendments and/or revisions of the IDA&A as you agreed to it originally, as provided during the previous year in official Market America literature [. . .] You agree to be bound by the Terms and Conditions of that Agreement . . . as amended from time to time."

(Wallace Decl. ¶¶ 16-17)(emphasis supplied). Mr. Yang alleges that he renewed his distributorship "by receiving physical invoices . . . and paying the yearly fee," and also

acknowledges signing the 2011 Annual Renewal Form which "referred to being bound by the terms and conditions of that [Distributor] [A]greement" but that "[t]o the best of my recollection," no terms and conditions were included with the document he signed. (Yang Decl. ¶¶ 4-5.) Respondent Yang states he was presented with the 2011 renewal on a "take it or leave it basis," and was told he was in danger of "los[ing] all the points and commission that I had earned, and my entire investment" if the document was not executed immediately. (Id. ¶¶ 4-5.) Respondent Yang also acknowledges that he subsequently received a Market America Career Manual in April 2012, and he continued to sign up for Market America by paying the yearly fee.

Even under Mr. Yang's version of events, he signed an Agreement in 2009, and he signed a renewal form in 2011. Mr. Yang does not explain what he signed, does not indicate what the forms said, and does not know if the forms included an arbitration clause. Petitioners have submitted copies of Annual Renewal Forms, hand-signed by Mr. Yang, for 2010 and 2011, and each of those forms specifically includes an agreement to be bound by the terms and conditions of the Distributor Agreement. In addition, Mr. Yang acknowledges that he received a Career Manual in 2012 that included notice of the arbitration clause provisions, and he continued to pay his yearly renewal fee thereafter for 2013 and 2014. Mr. Yang has not unequivocally denied the existence of the arbitration agreement.

Moreover, the Court notes that the claims raised by Mr. Yang all arise from the Distributorship Agreement that contained the arbitration clause that he does not recollect.

The Fourth Circuit has explained that, where "the issue is whether the underlying claims are such that the party asserting them should be estopped from denying the application of the arbitration clause," a court should "examine whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." <u>American Bankers Ins. Group. v. Long</u>, 453 F.3d 623, 629 (4th Cir. 2006). Notably, in pursuit of a recovery on the underlying claims in the California Action, Respondent Yang paints a different picture of his relationship with Market America and his access to company information. Respondents collectively allege that they "joined Market America and have become distributors," (Petition, Ex. 2 ¶¶ 1, 8, 68), that they "signed up with MarketAmerica," and that they now seek "to rescind contracts/agreements" they have made. (Id. ¶¶ 166, 168, 105). According to Respondents, including Mr. Yang, Market America "contractually requested [Respondents] . . . acknowledge that they had read and reviewed the current version of [its] Policies at the time they joined Market America, [and] to abide by the terms of the current version of the Policies," that were available to Respondents "through Market America's website at all times." (Id. ¶ 194). Thus, Respondents' claims in the California Action include assertions that Market America had fully disclosed policies that Respondents had access to, and required contractual agreements from the inception of their relationship, and in light of those assertions and the nature of the claims raised in the California Action, Respondents should be estopped from denying the existence of the Agreement, and all its terms, here.

The Court also notes that a consent to arbitration can be found even if the arbitration agreement was not formally signed, and may be shown based on an agreement that incorporates the arbitration provisions by reference. In Krusch v. TAMKO Bldg. Products, Inc., 34 F. Supp. 3d 584 (M.D.N.C. 2014), an agent for a party was provided samples of a roofing shingle containing a warning on each shingle that its purchase was subject to terms and conditions and that a copy could be obtained from a distributor or by contacting the company. Id. at 588-89. The incorporated materials contained an arbitration clause. The district court concluded that the incorporation-by-reference of a document containing an arbitration agreement was sufficient to provide constructive notice of the document's terms. Id. at 588-90. Here, Respondent Yang executed one or more documents which incorporate by reference the Distributor Agreement, and he also continued to make annual renewals after being provided with the Career Manual that gave additional notice of the arbitration provisions. Therefore, when coupled with Respondents' acknowledgement that Market America's policies were fully accessible, the Court will not permit Mr. Yang to commence suit based on the Distributorship Agreement but ignore its complete terms. In light of the record presented, the Court finds that all of the Respondents assented to the arbitration agreement, and Respondent Yang has not created a genuine factual dispute on this issue.[1]

---

[1] The Court notes that if Respondent Yang could create a genuine factual dispute on this issue, the remedy would not be dismissal, but would instead be an evidentiary hearing in this Court at which Yang could testify and both sides could present evidence. It does not appear that such a proceeding is necessary here, for the reasons set out above. The Court also notes that Respondent Yang's ability to act as a class representative could be affected if he contends that, unlike other potential class members, he did not enter into the Distributorship Agreement.

b.      Illusory Contract

Respondents contend that Market America's unilateral right to amend the Agreement renders it illusory and unenforceable.  (Resp'ts' Br. at 11-12; Resp'ts' Reply [Doc. #18] at 5).  Respondents rely on <u>Hooters of America, Inc. v. Phillips</u>, 173 F.3d 933, 938 (4th Cir. 1999), for support.  In that case, the agreement to arbitrate covered an employment contract, and arbitration was to be conducted by rules and procedures "as promulgated by the company from time to time."  <u>Id.</u> at 936.  The company's rules provided that two of three arbitrators were to be selected from a list it created, with no restrictions on who it could designate to serve (including its managers), that even after commencement of the arbitration the company alone could expand the scope of the arbitration, that only employees were required to provide notice of its claims, that the company could seek a summary dismissal of claims, and that the company alone retained the right to vacate an arbitration award under certain circumstances. <u>Id.</u> at 938-39.   The Fourth Circuit found that these arbitration rules, "when taken as a whole . . . are so one-sided that their only possible purpose is to undermine the neutrality of the proceeding."  <u>Id.</u> at 938.  The Fourth Circuit concluded that the company "materially breached the arbitration agreement by promulgating rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith."  <u>Id.</u> at 938.    In a more recent case, a district court applied the rationale of <u>Hooters</u>, and determined that the arbitration clause in a contract was enforceable because the right to modify or revoke the ADR procedure required 30 days notice, and because modifications

could not be made retroactively.  <u>Curtis v. GE Capital Corp.</u>, 5:12-CV-133, 2013 WL 4212932, at *4 (W.D.N.C. Aug. 15, 2013).

In the present case, the arbitration provision requires arbitration in accordance with the rules of the American Arbitration Association, an independent forum, and provides that each party may seek emergency or provisional relief in state court.  As Respondents correctly point out, the Distributorship Agreement permits Market America to amend the entire Agreement, and therefore presumably the arbitration clause, by providing notice in an official company publication or communication. According to the declaration of Market America's Chief Technology Officer, Eugene Wallace, Market America has not made any changes to the arbitration provision from 2010 to 2016.  (Wallace Decl. ¶ 14.)  Thus, while the principles outlined by the Fourth Circuit in <u>Hooters of America, Inc.</u>, are instructive, the facts here are more closely aligned with those of <u>Curtis</u>.  Similarly, a clause like the one here, permitting the terms to be "periodically amended," was determined to be proper and not illusory in <u>Abdullah v. Duke University Health System, Inc.</u>, 5:09-CV-8, 2009 WL 1971622, at *4 (E.D.N.C. July 8, 2009).  The court there found that an arbitration clause in an employment agreement requiring the employer and employee "to utilize this procedure to resolve disagreements falling within its scope, suggests that [ the employer] may not avoid the dispute resolution process by altering the terms . . .  so that it is no longer bound by it" was not illusory under North Carolina law.  <u>Id.</u> (internal quotation omitted).  The Fourth Circuit has reached similar results in interpreting contracts under differing state laws. <u>See</u> <u>e.g.</u>, <u>American General Life and Acc. Ins.</u>

Co. v. Wood, 429 F.3d 83, 91 n.5 (4th Cir. 2005) (under West Virginia law, an arbitration agreement was not illusory where plaintiff could amend its terms or discontinue the program at its discretion); Hill v. Peoplesoft USA, Inc., 412 F.3d. 540, 543-44 (4th Cir. 2005). Here, the requirement of formal publication or communication to Respondents provides notice of any changes to the Career Manual, the rules governing arbitration are set by the independent American Arbitration Association, and consistent with Abdullah, a court will not interpret the arbitration clause to allow Market America to avoid the dispute resolution process by altering its terms – which there is no record that it has attempted to do. Based upon these findings, the Court concludes that Respondents have not established that the agreement to arbitrate is illusory.

### c. Unconscionability

Respondents maintain that the arbitration clause in the Agreement is procedurally and substantively unconscionable. (Resp'ts' Br. at 12-17.) The Federal Arbitration Act "reflects 'a liberal federal policy favoring arbitration agreements,' and 'courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.'" Mansfield v. Vanderbilt Mortg. Finance, Inc., 29 F. Supp. 3d 645, 652 (E.D.N.C. 2014) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). "Under North Carolina law, a contract is unconscionable 'only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and

fair person would accept them on the other.'" Id. at 653 (quoting Brenner v. Little Red. Sch. House Ltd., 302 N.C. 207, 213 (1981)). A party must prove both procedural and substantive unconscionability to prevail on this defense. Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102-03 (2008). Procedural unconscionability "involves bargaining naughtiness in the form of surprise, lack of meaningful choice and inequality of bargaining power." Id. (internal quotation omitted.) Substantive unconscionability refers to "harsh, one-sided, and oppressive contract terms." Id. at 103.

(i)     procedural unconscionability

Although all Respondents raise the issue of procedural unconscionability, only Respondent Yang's declaration offers some factual support, and the Court notes that the remaining respondents may not rely on facts particular to Respondent Yang. Respondents contend, via argument of counsel, that the Distributor Agreement was "boilerplate,"[2] the font size is small, they have less bargaining power as compared to [Market America] and that [Market America] drafted the [Agreement]." (Resp'ts' Br. at 13.) Although Respondents contend that the language in the Agreement was not explained to them, only Respondent Yang provides some support, and then only as to a single Annual Renewal in 2011 which he contends was presented on a "take it or leave it" basis. Further, while all Respondents

---

[2] Respondents' arguments at times, inextricably intertwine complaints regarding the entire Agreement and the arbitration clause itself. "[T]he Supreme Court cautioned that the generally applicable contract defense of unconscionability may not be applied in a manner that targets the existence of an agreement to arbitrate as the basis for invalidating that Agreement." Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 180 (4th Cir. 2013) (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011).

collectively argue that they did not receive a Career Manual, this contention is only supported by Respondent Yang's statement that a Career Manual was first provided in 2012. Thus the Court notes that, apart from Respondent Yang, the record does not reflect the circumstances surrounding the execution of the agreements, or any issue involving the availability of documents or information prior to executing the agreements. In addition, even as to Respondent Yang, the contentions do not appear to rise to the level of procedural unconscionability. See Torrence v. Nationwide Budget Finance, 232 N.C. App. 306, 333-34 (2014). As to Respondents Lan and Liu, the Court notes that their allegations are insufficient to raise a concern regarding procedural unconscionability, as no allegations are made regarding facts surrounding the execution of their Agreements with Market America.

(ii)     substantive unconscionability

Respondents claim that the arbitration agreement is substantively unconscionable because of excessive costs to arbitrate; because Market America need not submit its claims to arbitration in all cases; because the pre-arbitration grievance procedure is unfair, causes delay and is futile; and because the required grievance process is not designed for the claims Respondent's intend to pursue in federal court. (Resp'ts' Br. at 14-17.) Market America maintains that challenges to the arbitration process, including costs, are not proper at this point, that regardless, arbitration costs are not prohibitive, that Market America does not have a unilateral right to file suit in court, and that that the grievance procedure is not applicable or required with respect to Respondents' claims. (Pet'rs' Br. [Doc. #16] 18-20.)

Addressing first the costs of arbitration, the Fourth Circuit, following Green Tree Fin. Corp. Ala. v. Randolph, 531 U.S. 79 (2000), recognized that to invalidate an arbitration agreement on the basis of costs, a party must present evidence on the likelihood of prohibitive arbitration costs, including cost of arbitration, an ability to pay, and the difference in costs between arbitration and litigation. Muriithi, 712 F.3d at 181. Respondents contend that the cost of travel to North Carolina together with the costs of arbitration, in light of the amount of damages they are claiming, "would deter" each of them from maintaining this action. (Yang Decl. ¶¶ 10-16; Lan Decl., Ex. M [Doc. #14-13] ¶¶ 4-11; Liu Decl., Ex. N [Doc. #14-14] ¶¶ 4-11). However, the factual declarations are problematic in light of the fact that the underlying merits are pled as a class-action and the costs figures presented appear to assess each of the three Respondents with the entire cost of the class litigation. For example, Respondent Lan alleges a loss of "approximately $7,000 as a result of [the] pyramid scheme" and that "it would cost me a minimum of approximately $101,500 to arbitrate any claim," including a filing fee of "between $5,000 and $65,000 (depending on whether class damages are considered in apportioning the fee on the sliding scale and whether a flexible fee is selected) . . . and a proceed fee of $9,000 and a final fee of $12,500," in addition to a $150 processing fee, and an arbitrator fee of $75,000 to include 10 to 15 trial days. (Lan Decl. ¶¶ 5-6, 9, 11.) Respondent Liu makes similar claims as to the cost of arbitration and estimates losses of $10,000. (Liu Decl. ¶¶ 10-11.) Respondent Yang estimates a loss of $60,000, with similar costs. (Yang Decl. ¶¶15-16.) The Court finds that Respondents' estimates are inconsistent with the costs published by the

American Arbitration Association ("AAA"). According to its fee schedule, the AAA assesses an initial fee in excess of $7,000 and a final fee of $12,500 only for those cases in which damages are claimed in excess of $10,000,000. (Townsend Decl., Ex. E [Doc. #17-1]). Thus, while it appears that each declaration asserts a relatively small dollar claim, the cost figures reflect 10 to 15 days of arbitration, with each individual respondent appearing to bear the entire costs. Petitioners point out that the filing fee for each of the Respondents' individual claims appears to be $750 with an additional $800 final fee at the conclusion of the arbitration (plus the costs of the arbitration itself). As in Muriithi, Respondents' estimates "bear[ ] no relation to the facts of the present case." Muriithi, 712 F.3d at 183. On the record presented, the Court cannot find that Respondents have met their "substantial burden of showing a likelihood of incurring prohibitive arbitration costs." Id. at 181 (internal quotation omitted).

Next, Respondents contend that the Agreement is unconscionable because the arbitration provision is not mutual, in that Market America retains the unilateral right to proceed in court. However, the arbitration clause in Section 20 of the Agreement applies equally to all parties.

Respondents also contend that the Agreement is unconscionable because it requires compliance with an internal grievance process that Respondents contend is an unfair process with a short, non-mutual, period of limitations, and no purpose other than delay. (Resp'ts' Br. at 14-17). However, Market America agrees that its internal grievance procedures do not apply to the claims raised by Respondents because Respondents' dispute is with Market America

directly.[3]  (Pet'rs' Br. at 10-11.)    Thus, Respondents' contentions regarding the grievance

process do not render the Agreement unconscionable, since all parties agree that the grievance

process does not apply and is not required for the underlying claims raised by Respondents,

and this interpretation is consistent with the provisions of the Career Manual.

d.  Non-Signatories

Respondents contend that the individual Petitioners (Market America officers James

Howard Ridinger, Loren Ridinger, and Marc Ashley) are not signatories to the Distribution

Agreement and therefore are not entitled to invoke the arbitration clause of the Agreement.

However, under North Carolina law, non-signatories to an arbitration agreement may enforce

its terms if "their alleged liability arises from his actions as an agent of the corporate signatory

to the arbitration agreement." Ellison v. Alexander, 207 N.C. App. 401, 412 (2010).    Finding

otherwise would allow a party to "too easily avoid the arbitration agreements that they signed

with corporate entities." Collie v. Wehr Dissolution Corp., 345 F. Supp. 2d 555, 562

(M.D.N.C. 2004) (quoting Davidson v. Becker, 256 F. Supp. 2d 377, 384 (D. Md. 2003)).

Similarly, with respect to Market America Worldwide, the Court notes that "[w]hen the charges

against a parent company and its subsidiary are based on the same facts and are inherently

---

[3] Market America's Career Manual explains, under the heading "Distributor Grievances and Complaints,"
that "Distributors having grievances or complaints regarding business practices or conduct relative to their
Market America business should first report it to their upline leadership, who should review the matter and
try to resolve it in the field."  (Career Manual (Doc. # 14-1] Ch. 14, Sec. 8 at 52-53.)  According to Market
America's general counsel, Clement Erhardt, disputes arising under the Career Manual are "handled by the
Dispute Resolution Board" and the Board does not hear disputes arising under the Agreement.  (Erhardt
Decl. [Doc. #17-5] ¶16.)

inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." J.J. Ryan & Sons, Inc., v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988).

The complaint in the California Action alleges conduct by the individual Petitioners to promote and carry out what Respondents contend is an illegal pyramid scheme. The complaint also alleges that Market America and the individual Petitioners "were members of a single association, with each member exercising control over the operations of the association [and] that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal." (Petition, Ex. 2 [Doc. #1-2] ¶¶ 25-26.) Although some of the claims here sound in tort, a party may not "use artful pleading to avoid arbitration." American Bankers Insurance Group v. Long, 453 F.3d 623, 630 (4th Cir. 2006) (internal quotation omitted). Because the Respondents' allegations in the California Action treat the Petitioners as part of a single enterprise sharing responsibility for the conduct of the enterprise, the Court finds it appropriate for Petitioners to defensively invoke the Agreement's arbitration clause in this instance.

e.  Class Actions

Respondents contend that if the Court compels arbitration, the arbitration should be permitted on a class-wide basis. (Resp'ts' Br. at 18.) Petitioners maintain that the language of

the arbitration clause cannot be read to fairly permit class-wide arbitration. (Resp. [Doc. #16] at 23-24.) In resolving this issue, Courts look to the terms of the arbitration clause "to avoid forcing parties to resolve their disputes though means not intended at the time of contract formation." Dell Webb Communities, Inc. v. Carlson, 817 F.3d 867, 873 (2016). The Supreme Court has "found that 'class action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.'" Id. at 875 (quoting Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 599 U.S. 662, 685 (2010)). In the present case, the Petitioners note that the arbitration clause is not written in the plural, repeatedly referencing "you" and making no provision for class-wide litigation. Respondents counter that the agreement's reference to "any controversy or claim" is sufficiently ambiguous to encompass class-wide arbitration. (Resp'ts' Br. at 18.) However, Respondents' argument conflates 'claims' with 'parties', and the Court does not find that Petitioners have consented to arbitrate on a class-wide basis by merely consenting to arbitration. Therefore the Court concludes that the reference to "any claim or controversy" is not sufficient to reflect an agreement to class-wide arbitration.

      f.   Void Agreement

Lastly, Respondents maintain that arbitration cannot be compelled because the Distribution Agreement is void and unenforceable as an illegal pyramid scheme under North Carolina law. The Court notes that this argument goes to the merits of the Parties' dispute and therefore arises after "the obligation to arbitrate a matter is established," and is a matter

for the arbitrator to decide. See Dell Webb Cmtys, Inc., 817 F.3d at 873. This issue does not impact the arbitrator's "underlying power" to arbitrate. Id. at 873-74. Respondents' arguments concern whether the business model of Market America is in fact an illegal pyramid scheme that does not comply with applicable law. Because the Court has concluded that the parties have agreed to arbitrate their disputes, an arbitrator will ultimately resolve this issue in the first instance.

    5. Motion to Strike

    Respondents have submitted evidentiary objections together with a request to strike portions of declarations [Doc. # 19] submitted on behalf of Petitioners. Respondents contend that the declarations contain inadmissible statements for a variety of reasons, including because extrinsic evidence interpreting contractual documents should be excluded; the statements reflect legal conclusions and lack a factual foundation; certain statements are speculative, conclusory and constitute hearsay; the statements are vague and ambiguous; and documents appended are not authenticated. (Resp'ts' Br. [Doc. #20] at 1-3). However, under this Court's Local Rule 7.3

> Rather than filing a motion to strike, a party may assert evidentiary objections in its response or reply memorandum to factual allegations contained in memoranda or replies supporting or opposing motions to dismiss, motions for summary judgment, and other motions . . . . If a separate motion strike is filed asserting evidentiary objections, the motion to strike may be summarily denied by the Court, and any issues instead addressed in the ruling on the underlying motion.

Based on the provisions of Local Rule 7.3, Respondents' Motion to Strike [Doc. #19] will be

summarily denied.  The Court has considered Respondents' evidentiary objections and contentions in evaluating the Motion to Dismiss above.  For example, the Court has not considered legal conclusions contained in the declarations, and the Court has considered the foundation or basis for the information presented and the issues of vagueness or ambiguity in evaluating the assertions in the declarations.

III.    CONCLUSION

For the reasons set out above, the Motion to Dismiss and Motion to Strike will be denied.  In addition, it appears that the Petition for an Order Compelling Arbitration should be granted, since that matter has been briefed and considered here.  The Court will nevertheless stay entry of any Order Compelling Arbitration for 14 days, to allow either party to address the matter further if they believe that further proceedings are necessary or appropriate before the Court proceeds to entry of an Order on the Petition.

IT IS THEREFORE ORDERED that Respondents' Motion to Dismiss [Doc. #12] and Motion to Strike [Doc. #19] are DENIED.

IT IS FURTHER ORDERED that the Court will stay entry of an Order on the Petition for Order Compelling Arbitration [Doc. #1] for 14 days, to allow either party to file a motion or brief, with supporting citations, to the extent they believe that further proceedings are necessary or appropriate before the Court proceeds to entry of an Order on the Petition.

This, the 12th day of July, 2018.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge